UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN KRUPA, III,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID NALEWAY, TERRANCE COCHRAN and BRIDGET MCLAUGHLIN, DEBRA KIRBY, UNKNOWN OFFICERS and AGENTS OF THE CITY OF CHICAGO, ILLINOIS and THE CITY OF CHICAGO, ILLINOIS, INDIVIDUALLY and AS PRINCIPAL OF ITS AGENTS, OFFICERS DAVID NALEWAY, TERRANCE COCHRAN, BRIDGET MCLAUGHLIN, DEBRA KIRBY and UNKNOWN OFFICERS and AGENTS,<br><br>    Defendants. | No. 06 C 1309<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

After the filing of a complaint by a civilian arrestee, Plaintiff police officer became the subject of a search. Plaintiff was subsequently arrested for obstructing the investigation. After being acquitted, he was terminated. Plaintiff alleges the following counts against Defendant officers and the City of Chicago: (1) violations of 42 U.S.C. § 1983; (2) malicious prosecution; and (3) false imprisonment. Defendants now move for summary judgment, arguing (1) probable cause existed to arrest Plaintiff; (2) Defendants are qualifiedly immune; and (3) there is insufficient evidence to support Plaintiff's § 1983 claim. For the following reasons, Defendants' motions are granted.

## II. PRELIMINARY ISSUES

Defendants move to strike Plaintiff's Local Rule 56.1(b)(3)(B) statement of additional facts as well as certain of Plaintiff's responses to Defendant's Local Rule 56.1(a)(3) statement of undisputed facts. First, Defendants complain that Plaintiff's statement and response are untimely and incomplete. Defendants also argue that Plaintiff often times takes logically inconsistent positions and disputes facts that he collaterally estopped from disputing. Plaintiff did eventually provide supporting exhibits, thereby completing the filing. Although untimely, this delay in no way prejudiced Defendants. It is true that in his response, Plaintiff does often take certain logically inconsistent positions, and where they are material, I will address these inconsistencies. As addressed infra, Defendants' collateral estoppel argument fails, and therefore it cannot be a ground for striking Plaintiff's statement or the corresponding responses.

I do, however, agree with Defendants that Plaintiff's statements of fact 5 and 6 are irrelevant, and I deem them stricken. Insofar as they are argumentative, statements of fact 11, 12, 20, and 21 are also stricken. Plaintiff's statement of fact 9 is stricken, as it reflects an expert opinion which had not been disclosed to Defendants. I deny Defendants' motion to strike statements 18, 19, and 39 as irrelevant. As the following discussion makes clear, what Plaintiff was told he could and could not do is integral to the question of whether probable cause existed. Statements 18 and 19 are relevant to the issue, and statement 39 helps to corroborate Plaintiff's position.

**III. STATEMENT OF FACTS**

On June 7th, 2004, Plaintiff John Krupa, III ("Krupa"), a Chicago police officer, was on duty with his partner Vincent Calvino ("Calvino").[1] During their shift, Victor Perez ("Perez") was stopped for traffic violations and was subsequently arrested by Officers Rounds and Rivera for possession of cocaine. Defendants maintain that Krupa and Calvino assisted the two arresting officers. Plaintiff disputes this. He contends that while in their squad car, he and his partner merely pulled up to the arresting officers to inquire as to their safety, and that at the time he and his partner arrived, the arrest had already taken place.

On June 15, 2004, Perez filed a complaint alleging that a police officer had planted the cocaine in his vehicle. As a result, the Internal Affairs Division of the Chicago Police Department ("IAD") initiated an investigation. During the investigation, Perez identified Calvino as the officer who planted the drugs. Perez also described a second police officer fitting Krupa's description as Calvino's partner. On September 17, Defendants Sgt. Terrance Cochran ("Cochran"), Lt. David Naleway ("Naleway"), and Assistant Deputy Superintendent ("ADS") Debra Kirby ("Kirby"), all members of IAD, authorized a search of Plaintiff's property.

On September 30, 2004, Plaintiff was working the 3:00 p.m. - 11:00 p.m. shift with his partner, Michael Parages ("Parages"). The two were ordered to drive their vehicle to the vicinity of Ogden Avenue and Christiana. They arrived at the intersection at 6:30 p.m. when members from IAD and the 10th District were waiting for them including Lt. Naleway, Sgt. Cochran, Police Agent McLaughlin, a Sgt. Winters, and K-9 Unit Officer Michael Kunis with his narcotics dog. Sgt. Cochran informed Krupa and Parages that Kunis and the narcotics dog were going to

---

[1] This was the first and only time Plaintiff was partnered with Officer Calvino.

search the car and its contents. During the search, the dog indicated positive for an odor of narcotics on the back seat of the squad car as well as on two bags, one smaller green bag, and one larger black duffle.[2] Krupa identified the bags as his personal property, along with two other bags in the vehicle. Plaintiff was told to place all four bags in the trunk of Sgt. Winters' squad car. He then rode with Winters to the 10th District station so that Lt. Naleway could complete the search in better lighting and out of public view. Officer Parages followed in the squad car.

Once at the station, Krupa removed all four bags from the trunk and carried them to the second floor administrative office of the police station.[3] He entered the office through a set of double doors, each with a window. Once inside, Krupa placed his bags on sheets of newspaper on the floor. At that point, Krupa admits that he knew that his bags were the subject of an administrative search.

In his deposition testimony, Defendant Cochran testified that he ordered Krupa not to touch his bags or leave the room. Agent McLaughlin also testified that she relayed the same order. The two maintain that Krupa repeatedly asked to retrieve from his bags items such as his cell phone and keys. Sgt. Cochran testified that he told Officer Krupa that he could use the office phone if he needed to and that he could not go anywhere. Agent McLaughlin testified that she "believed" that she and others all informed Officer Krupa "not to leave the room, not to touch his property."[4] In his statement to IAD, Krupa denies that he was given such orders. Parages, who

---

[2] Ultimately, no narcotics were recovered from the back seat of the vehicle.

[3] The men's locker room is also located on this floor.

[4] In support of this assertion, Defendants also cite to the Police Board Decision of February 25, 2009. There, the Police Board found that Lt. Naleway gave Krupa an order "to not leave the room and/or not touch" the green bag. However, Plaintiff disputes the use of this

4

upon arrival sat in the foyer of the office, also maintains that he never witnessed Cochran, Naleway or Kirby order Krupa not to touch or remove his belongings. The orders do not appear in the police report.

Eventually Krupa was allowed to use an office phone to call Fraternal Order of Police representative Frank Di Maria ("Di Maria"). At 8:00 p.m., Sgt. Cochran read Krupa his Miranda warning and requested he sign a consent-to-search form. At 8:09 p.m., after realizing that the consent forms contained a typographical error, Sgt. Cochran once again read Krupa his Miranda warning and presented him with a new consent form. Krupa refused to sign the forms. Di Maria subsequently arrived at the police station and was allowed to speak to Krupa alone in the administrative office. It was only after he arrived at the station that he learned of the consent forms for the first time. In his IAD statement, Officer Rivera, who was detailed to remain with Krupa from 7:30 p.m. until 9:00 p.m., said that upon Di Maria's arrival, he heard someone tell Krupa that he was free to leave but that his bags had to remain in the office.

Around 9:00 p.m., ADS Kirby arrived at the station after being notified of the search and the positive indications by the narcotics dog. According to Defendants, Kirby contacted the Cook County State's Attorney's Office to determine whether the Chicago Police Department needed a warrant to search Krupa's bags in order to use in a criminal prosecution any contraband that might be seized. Di Maria testified to a conversation with Kirby in which Kirby assured Di Maria that Krupa was not under arrest, and that at that time, he was not "being served with allegations and charges and administrative rights." According to Di Maria, Kirby told Di Maria that Krupa was free to leave at the end of his shift. Kirby recalls telling Di Maria that Krupa was

---

opinion as it is currently the subject of an appeal. The Police Board decision is discussed *infra*.

5

not under arrest, but that there was an ongoing investigation. Kirby testified that she told Di Maria that Krupa was not free to leave, and that the issue might be revisited at the end of his shift. At 10:15 p.m., Di Maria left the administrative office.

Sometime after Di Maria's exit, Krupa left through the back door of the administrative office, taking the small green bag with him.[5] Krupa testified that each night at the end of his tour, he would collect all of his equipment and put his four bags in his locker. Because the bags were already in the building where the locker room was located, Krupa took only the green bag, which contained his keys and other personal belongings, to his vehicle to collect the equipment. He left the building for approximately 10-15 minutes, at which point ADS Kirby ordered a search for Krupa in the police station and officer parking lots. Krupa then returned to the station, with the now-open green bag, to put all of his bags in his locker. It was at that point that Sgt. Cochran, acting at the direction of ADS Kirby, arrested Krupa. According to Defendants, the basis for the arrest was Krupa's knowing removal of evidence in an investigation. Although Plaintiff does not dispute Defendant's assertion that Sgt. Cochran arrested him, in his own statement of facts, Krupa maintains that it was Lt. Naleway who physically seized him and placed him under arrest. In his statement to IAD, Krupa explains that he asked Naleway why he was under arrest, to which Naleway responded "I'll think of something." Defendants dispute this assertion, citing to testimony by Kirby and Cochran that Kirby ordered Cochran to make the arrest as well as to charge Krupa with obstruction.

---

[5] Defendants maintain that Krupa left out the back door, which was further away from his car, so as to avoid seeing other officers and walking by the front desk.

The Cook County State's Attorney's Office prosecuted Krupa on the charge of Obstruction of a Peace Officer ("Obstruction Statute"). 720 ILL. COMP. STAT. 5/31-1(a).[6] On March 10, 2005, Krupa was acquitted following a bench trial. The Superintendent of the Chicago Police sought Krupa's separation from the Chicago Police Department, and a hearing before the Chicago Police Board followed. At the five-day hearing, Krupa was represented by three attorneys. The Board found that (1) on September 30, 2004, Lt. Naleway and Sgt. Cochran both ordered Krupa not to leave the room and/or not to touch the green bag; (2) Krupa disobeyed these orders and left the station with the green bag; and (3) on November 16, 2005, Krupa made a false report to Sergeant Thomas Finnelly by denying that Sgt. Cochran and Lt. Naleway ordered him on September 30 not to leave and/or remove his personal belongings from the station administrative offices.

In his first amended complaint, Plaintiff alleges the following counts: (1) violation of 42 U.S.C. § 1983 alleging that Defendants wrongfully arrested and falsely charged Plaintiff; conspired to falsely arrest and prosecute Plaintiff; illegally seized Plaintiff's personal property; and failed to provide training to the members of the Chicago Police Department in recovering, transporting and handling recovered narcotics.;[7] (2) malicious prosecution; and (3) false

---

[6] Subsection (a) states:

A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor.

720 ILL. COMP. STAT. 5/31-1(a)(2004).

[7] In this count, Plaintiff also alludes to "unknown officers and agents of the City of Chicago, Illinois" but seeks relief only from those Defendants named.

imprisonment. Defendants now move for summary judgment, arguing (1) probable cause existed to arrest Plaintiff; (2) Defendants are qualifiedly immune; and (3) there is insufficient evidence to support Plaintiff's § 1983 claim.

## IV. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any

8

disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers*, *Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

## V. DISCUSSION

### A. Probable Cause

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). "A police officer has probable cause to arrest if, at the time of the arrest, the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)(quotations omitted). "The court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). "The probable cause determination must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Chelios*, 520 F.3d at 686 (7th Cir. 2008).

In this case, it is unclear exactly who the arresting officer was. Although Plaintiff does not dispute Defendant's assertion that Sgt. Cochran arrested him, in his own statement of facts, Krupa maintains that it was Lt. Naleway who physically seized him and placed him under arrest. In either case, it is clear from the record that Defendants Naleway, Cochran, and McLaughlin, to the extent that Plaintiff alleges false arrest against her, were acting at the direction of ADS Kirby.

9

"The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." *U.S. v. Randall*, 947 F.2d 1314, 1319 (7th Cir. 1991). "The collective knowledge doctrine is designed to allow law enforcement personnel from the same agency, or from different jurisdictions, to rely on the probable cause determinations of one another in order to apprehend specific suspects." *Maltby v. Winston*, 36 F.3d 548, 564 n. 26 (7th Cir.1994). "[W]hen a superior officer, in communication with an inferior officer, orders that officer to make an arrest, it is proper to consider the superior's knowledge in determining the overall reasonableness of the police conduct as it relates to probable cause." *U.S. v. Swift*, 220 F.3d 502, 508 (7th Cir. 2000).

Defendant Kirby maintains that she had probable cause to order the arrest of Plaintiff. In order to determine the validity of this assertion, I must consider what Kirby knew at the time she ordered the arrest. There is no dispute that Kirby was told about the investigation into the alleged planting of narcotics on an arrestee. Kirby was also notified of the search by the narcotics dog, as well as of the positive indications on Krupa's personal bags. Defendants maintain that Lt. Naleway reported to ADS Kirby that Krupa was ordered not to touch his bags and not to leave the administrative office, however, Defendants point to nothing in the record to corroborate the assertion that Kirby was notified. Plaintiff denies that any such orders were ever given, and Parages says he never heard such an order. Rivera recalls hearing someone tell Krupa that he was free to leave but that his bags had to remain in the office.

Defendants claim the Police Board finding that such orders were given should have a preclusive effect. However, preclusion is inappropriate here.[8] More importantly, the issue of whether Krupa was ordered to stay put and not touch the bags is not dispositive in this case, and neither is the assertion that ADS Kirby told Di Maria in Krupa's presence that Krupa was free to go home at the end of his tour. If this assertion is true, a reasonable finder of fact could certainly conclude that Krupa's presence was no longer necessary. But Krupa was not arrested for leaving the room; he was arrested for removing the bag - the potential evidence. So the question relevant to the probable cause inquiry is not whether it was reasonable for Krupa to exit, but rather whether it was reasonable for him to infer that he could take his bag along with him, and whether Kirby could reasonably believe that such a course of action violated the Obstruction Statute. Krupa, a police officer, was present for the search and was aware that the narcotics dog had

---

[8] To determine whether any such effect may be granted to the Police Board's decision in this case, I must first consider whether the Board acted in a judicial capacity at the time it made its finding. *Banks v. Chicago Housing Authority*, 13 F. Supp. 2d 793, 796 (N.D. Ill. 1998). The Board acted as an adjudicator where there existed (1) adequate notice, (2) Plaintiff's right to present evidence on his own behalf, (3) a formulation of issues of law and fact, (4) a final determination, and (5) procedural elements necessary to conclusively determine the issues in question. Id. If it is established that the Police Board did indeed act in a judicial capacity, four additional conditions must be established for its decision to be granted preclusive effect: "(1) a final decision on the merits must have been reached; (2) the issues on which estoppel is sought were essential to the decision; (3) the party against whom estoppel is invoked had a full opportunity to address the issues in the case; and (4) the issues decided are identical to the issues on which estoppel is sought." *Id.*

The record indicates that at the Police Board hearing, Plaintiff was represented by counsel and presented evidence on his own behalf. The issues of adequacy of notice, formulation of issues, and procedural requirements are not specifically addressed. Even were I to assume that the Police Board was acting in a judicial capacity, reliance on its findings at this time would be premature. Plaintiff has appealed the Board's decision to the Circuit Court of Cook County, thereby rendering unsatisfied the finality requirement. *See Wilson v. City of Chicago*, 900 F. Supp. 1015, 1029 (N.D. Ill. 1995) (where the decision of the Police Board is being reviewed on appeal, collateral estoppel does not attach).

alerted on the two bags. Krupa concedes that there was probable cause to search the bags. It is difficult to see how, in light of these facts, Krupa could think it reasonable to remove one of the bags without permission or inquiry.

Kirby was told about the investigation into the alleged planting of narcotics on an arrestee. Kirby was also notified of the search by the narcotics dog, as well as of the positive indications on Krupa's personal bags. She knew that he removed one of those bags from the station in the midst of an investigation. Regardless of whether or not Kirby thought that Krupa was ordered to stay in the room and not to touch the bags, she had probable cause to believe that by leaving with one of the bags, he had violated the Obstruction Statute. For these reasons I find no issue of material fact as to whether Defendant Kirby had probable cause to arrest Krupa, and Kirby's motion for summary judgment on Plaintiff's malicious prosecution claims and false imprisonment claims is granted. Pursuant to the collective knowledge doctrine, the remaining defendants' motions for summary judgment on the same claims are also granted, as there is no question as to the propriety of the arrest.

## B. Qualified Immunity

Even assuming that Defendants did not have probable cause for the arrest, they would be shielded from liability by qualified immunity. "Whether police officers had probable cause to arrest a suspect and whether they are entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officers with an additional layer of protection against civil liability if a reviewing court finds that they did not have probable cause." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001)(citation and quotations omitted). "In an unlawful arrest case in which the defendants raise qualified immunity as a defense, this court will determine if the officer actually had probable cause or, if there was no probable cause, whether a

reasonable officer could have mistakenly believed that probable cause existed." *Id.* (citation and quotations omitted).

Individual Defendants maintain that they are immune from suit under the doctrine of qualified immunity. This doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). In determining whether qualified immunity applies in a particular instance, courts must consider whether (1) the facts alleged establish that the defendant officers violated a constitutional right; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), receded from by *Pearson*, 129 S. Ct. at 818 (judges may exercise discretion in deciding which of the two prongs of the Saucier analysis should be addressed first). The court must also determine "whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted." *Mustafa*, 442 F.3d at 548 (7th Cir. 2006). The Seventh Circuit has held that there is "a right to be free from an arrest that lacked probable cause, and that right is clearly established[.]" *Id.* The only question that remains is whether a reasonable officer could believe that Plaintiff's arrest was lawful.

Defendants contend that the arrest was lawful in light of the fact that they relied on the Illinois Obstruction of a Peace Officer Statute. 720 ILL. COMP. STAT. 5/31-1(a)(2004). According to Defendants, they were acting within their official capacity in conducting the investigation, and Krupa hindered the investigation while Defendants were seeking a search warrant. Defendants also argue that the arrest was lawful under the "closely-related" crime doctrine, which allows for the justification of an arrest where Defendants arguably had probable cause to arrest Plaintiff either for the precise offense cited, in this case, obstruction, or for a

13

different, closely related offense. In this case, Defendants claim that both section 5/31-4 of the Illinois Criminal Code[9] and section 2-84-290 of the Chicago Municipal Code[10] provide alternative, closely related bases for Plaintiff's arrest.[11]

Plaintiff argues essentially that because the Circuit Court found at the conclusion of Krupa's case that the Obstruction Statute does not apply to administrative investigations, the arrest was unlawful. However, this argument fails since the statute itself makes no distinction between administrative and criminal investigations. Plaintiff fails to articulate how an officer in Defendants' position should have known that the statute did not apply in that instance, and makes only a retrospective argument on the basis of the Circuit Court's findings. The application of the

---

[9] Subsection (a) of section 5/31-4 states:

A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:
Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information[.]

720 ILL. COMP. STAT. 5/31-4.

[10] Section 2-84-290 of the Chicago Municipal Code states:

Any member of the police department who shall neglect or refuse to perform any duty required of him by ... the rules and regulations of the department of police ... may, in addition to any other penalty or punishment imposed by law, be fined not more than $100.00 for each offense.

Section 2-84-230 specifies that Chicago police officers have the power to make an arrest for violation of the Code. Chic. Mun. Code § 2-84-230.

[11] Plaintiff basically ignores Defendants' arguments based on the closely related offense doctrine and fails to address Defendants' reliance on the Chicago Municipal Code and the Illinois Criminal Code.

14

statute was arguably appropriate at the time the arrest was made, and Plaintiff does not argue otherwise.

In his argument against the application of qualified immunity, Plaintiff does briefly state that Defendants lacked probable cause to arrest Plaintiff, and he contests as premature Defendants' reliance on the Police Board's findings that Plaintiff was ordered not to touch his belongings. Plaintiff seems to be making the argument, albeit ineffectively articulated, that because Plaintiff was never ordered to remain in the room, and because ADS Kirby allegedly told Di Maria that Krupa would be free to go, the arrest was objectively unreasonable. As discussed supra, this issue is immaterial to the question of whether it was reasonable for Kirby to order the arrest. Krupa knew the bags were the subject of a search and admits that there was probable cause for that search. Kirby knew about the accusations, the investigation, and the positive alert by the narcotics dog. Kirby also knew that Krupa had removed from the station one of the bags for which Kirby was trying to secure a search warrant. Regardless of whether Kirby told Di Maria that Krupa was free to leave, Kirby could have reasonably believed that she had probable cause to make the arrest in light of what she knew at that time. Defendants' entitlement to qualified immunity is an alternative ground for summary judgment here.

**C. Section 1983**

In his § 1983 claim, Plaintiff alleges that Defendants wrongfully arrested and falsely charged Plaintiff; conspired to falsely arrest and prosecute Plaintiff; illegally seized Plaintiff's personal property; and failed to provide training to the members of the Chicago Police Department in recovering, transporting and handling recovered narcotics. Because Defendants had probable cause to arrest Plaintiff and because Defendants are qualifiedly immune from suit, to the extent that Plaintiff's § 1983 claim alleges false arrest and illegal seizure, it must fail.

As to the charges of conspiracy and failure to train, Plaintiff fails to respond to Defendants' arguments that (1) Plaintiff has put forth no evidence of a conspiracy; and (2) there is no causal relationship between the alleged policy and the alleged constitutional deprivation. "[I]t is not the obligation of the court to research and construct the legal arguments available to parties, and that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *Thakore v. Universal Mach. Co. of Pottstown, Inc.*, No. 05 C 5262, 2009 WL 3241619, at *7 (N.D. Ill. 2009); *see also Swanigan v. Trotter*, 645 F. Supp. 2d 656, 681 (N.D. Ill. 2009) ("Failure to properly develop an argument with citation to relevant legal authority constitutes a waiver."); and *Brach v. City of Wausau*, 617 F. Supp. 2d 796, 806 (W.D. Wis. 2009) ("a failure to meaningfully oppose an argument operates as a waiver"). Plaintiff has waived the right to challenge Defendants' aforementioned arguments, and to the extent that Plaintiff's § 1983 claim alleges conspiracy and failure to train, it must fail.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Strike are granted in part and denied in part; Defendants' Motions for Summary Judgment are granted.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: January 12, 2010